IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

PAUL LOWE, #1204131                          §

VS.                                          §                    CIVIL ACTION NO. 9:07cv225
                                                                 CONSOLIDATED WITH
DIRECTOR, TDCJ-CID                           §                    CIVIL ACTION NO. 9:07cv237

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Petitioner Paul Lowe, an inmate confined in the Texas prison system, proceeding *pro se*, filed

this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition was transferred

to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Statement of the Case

The Petitioner is confined in the Texas prison system pursuant to an Angelina County

conviction for the offense of manufacture of a controlled substance - methamphetamine, Cause

Number 23,712.  On October 16, 2003, after a jury trial, he was sentenced to 99 years confinement

in the Texas prison system.  The Sixth Court of Appeals affirmed the conviction on July 23, 2004.

The Texas Court of Criminal Appeals refused his petition for discretionary review on January 19,

2005.

The Petitioner filed an application for a writ of habeas corpus in state court on December 7,

2005.  On May 24, 2006, the Texas Court of Criminal Appeals remanded the application for further

development.  The Petitioner's trial attorney prepared an affidavit in accordance with the instructions

of the Texas Court of Criminal Appeals.  On June 19, 2007, the trial court entered findings of fact

and conclusions.  On August 22, 2007, the Texas Court of Criminal Appeals denied the application

without written order.

The present petition for a writ of habeas corpus was filed on September 19, 2007.  As in his

state court application, the Petitioner alleged that his attorney was ineffective for a number of

1

reasons.  The Director filed an answer on November 7, 2007.  The Petitioner filed a response on November 26, 2007.

Facts of the Case

The basic facts of the case were set forth by the Sixth Court of Appeals as follows:

Paul Lowe appeals his conviction for manufacture of a controlled substance, namely methamphetamine. During an investigation of a suspected methamphetamine laboratory, police discovered, in a motel room that Lowe was occupying, both equipment which could be used to manufacture methamphetamine and methamphetamine in the process of being produced. . . .

The State introduced several "suspicious circumstances," which tend to connect Lowe to the manufacture of methamphetamine. The State introduced evidence that Lowe had paid the rent for the motel room, knew how to manufacture methamphetamine, knew what compounds were being used in the motel room, and was in the company of the accomplice at the time of the raid.

Although the motel room had been registered under the name Jerry or Larry Lowe, Eric Tceng, the owner of the motel, testified that Paul Lowe personally paid the rent for the week in question. Tceng did not register the original renter and did not know if Paul Lowe was the same individual who originally rented the room.

While securing the crime scene and assessing the safety measures needed, Officer Randall Brooks, a D.E.A. cite-certified safety officer, asked Lowe if there was any sodium or lithium metal in the motel room. Lowe responded "no," and said that there was no anhydrous ammonia either. Officer Brooks testified that he did not ask Lowe whether the bathroom contained anhydrous ammonia and that his response indicated that he knew how to "cook" methamphetamine including multiple methods to manufacture methamphetamine.

Lowe was also found in the company of the accomplice. . . .  When the police knocked on the door of the motel room, they heard a female voice and observed a red-headed female peeking out of the window of the motel room. Shortly after the police knocked on the door, Lowe opened the front door to talk to the officers. The accomplice, Tracy Thomas, was apprehended while fleeing from the scene. William Casper, an officer with the Lufkin Police Department, testified that he observed Thomas exit the bathroom window of the motel room in question and attempt to flee while only partially dressed. Officer Casper testified that it is unusual for a person to exit a bathroom window and for a female to be outside without wearing a shirt. No other individuals were found inside the motel room. This evidence establishes that Lowe was in the company of the accomplice at or near the time of the offense. . . .

Thomas testified that she and Lowe had manufactured the methamphetamine together. She testified that Lowe was the primary cook and that she just assisted him.

As discussed previously, Lowe was present at the scene and demonstrated a knowledge of the methods used to make methamphetamine and what specific compounds were used. Shortly after the police knocked on the door, Lowe exited the motel room by the front door to talk to the officers. The room also contained a suitcase with Lowe's name on it, Lowe's high school diploma, several letters addressed to Lowe, and a certificate with Lowe's name

on it. Officer Baker testified that, during the initial investigation of the motel room, the bathroom contained smoke and fumes. The smoke and fumes indicated that a chemical reaction was still occurring inside the motel room when the police arrived. The officers found freshly cooked methamphetamine drying in a Pyrex dish on the bed. While securing the crime scene and assessing the safety measures needed, Officer Randall Brooks, a D.E.A. cite-certified safety officer, asked Lowe if there were any sodium or lithium metal in the motel room. Lowe responded "no" and that there was no anhydrous ammonia either. Officer Brooks testified that he did not ask Lowe whether the bathroom contained anhydrous ammonia and that his response indicated that he knew how to "cook" methamphetamine including multiple methods to manufacture methamphetamine.

The State established that methamphetamine was found at the scene and that the room contained materials that could be used in the manufacture of methamphetamine. Kevin Minor, a chemist with the Texas Department of Public Safety, testified that the samples taken from the motel tested positive for methamphetamine and exceeded four grams in aggregate weight. The motel room contained various apparatus which could be used to manufacture methamphetamine. There was a plastic tube containing ice and water. Electrical cords were running all over the room which were taped down. The microwave had been sealed with tape to prevent the gases from escaping. In the bathroom, the police found a methamphetamine reaction vessel consisting of a jug with tubing running out of it sealed with tape. Police also found containers of Red Devil Lye, a compound with a red phosphorous color, and other compounds used in the manufacture of methamphetamine.

*Lowe v. State*, No. 06-03-00240-CR, 2004 WL 1635568 (Tex. App. - Texarkana July 23, 2004)

## Discussion and Analysis

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow.  A person seeking federal habeas corpus review must assert a violation of a federal constitutional right.  *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993).  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);  *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).  In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.  *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners was further limited by the Antiterrorism and Effective Death Penalty Act of 1996.  The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-– (1) resulted in a decision that was contrary to, or involved an

3

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-413 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-1225 (5th Cir. 1997). The Supreme Court has stressed that the "question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). The presumption of correctness is especially strong where the trial court and state habeas court are one in the same. *See Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003).

The Petitioner alleges that his attorney was ineffective. In order to succeed on a claim of ineffective assistance of counsel, a habeas corpus petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. He must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697.

4

The Petitioner's first allegation of ineffective assistance of counsel concerned his attorney's failure to seek out and interview witnesses favorable to the defense.  He noted that numerous affidavits were filed by witnesses who stated that trial counsel never contacted them.  Each person specified what they would have been able to testify to at trial.  In the state application, the Petitioner attached affidavits from the following five people: David Maddux, Patrick Butler, Paul Lowe, Jerry Lowe and Donna Tucker.  The Petitioner complained about his trial attorney's statement that was submitted in the state habeas corpus proceedings where counsel merely filed an affidavit stating that there were no witnesses and that he would have called them if there were witnesses.  The Petitioner noted that the affidavits submitted by him contradict his attorney's statement.  The Petitioner also characterized a statement by David Maddux in the second supplemental affidavit by his attorney as a fake.  He submitted a statement from Maddux saying that if anyone changed his statement of August 15, 2005, then that person is lying to him.  The Petitioner asserted that Angelina County and his trial attorney have engaged in illegal activity in order to uphold the illegal conviction.  He further argued that he is entitled to a hearing because there is a dispute on this issue.

The Director's response noted that the Petitioner complained in the state habeas corpus proceedings about the failure to interview David Maddux, Patrick Butler and Travis Roberts.  He further noted that complaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative.  *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  The Director also noted that in order to prevail on his claim, a petitioner must show that the witness' testimony would have been favorable and that the witness would have testified.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

The Director summarized the affidavit by Patrick Butler, who indicated that he rode with Tracy Thomas to court and that she claimed that the district attorney's office was forcing her to lie in her testimony against the Petitioner to avoid prison.  The Texas Court of Criminal Appeals

5

remanded this issue for further development, and counsel stated that he did not remember Patrick Butler.  The Director added that there was no reason for counsel to recall Butler since there is no indication that Butler made himself known to counsel or that counsel would have had any reason to seek him out.  Further, counsel impeached Thomas at trial along these same lines.  Thomas asserted at trial that the Petitioner was the one who was actually trying to get her to lie on the stand.  The Director noted that the essence of Butler's anticipated testimony, which concerned Thomas' testimony, was introduced at trial through counsel's cross-examination of Thomas.  The Petitioner's response characterized the Director's statement that the Texas Court of Criminal Appeals remanded the Butler issue for development as false because the remand concerned Maddux.  The Petitioner, however, is incorrect.  The remand order concerned both Patrick Butler and David Maddux.  The Petitioner also stated that both he and his brother told counsel about Butler.  He added that Butler's testimony would have been useful to show why Thomas was testifying and to discredit her.

The Director noted that the Petitioner next claimed that counsel was ineffective for failing to interview Travis Roberts prior to the trial.  He summarized Roberts' testimony as being favorable to the Petitioner and in conflict with Thomas' testimony.  More specifically, Roberts testified that the Petitioner was upset that people were using his room to manufacture methamphetamine and that he had left the room for about thirty minutes and returned to find the police outside the Petitioner's room.  The Petitioner's response noted that counsel could have interviewed Roberts before trial and that he could have thus obtained evidence to show that Roberts' testimony was true.

The Director also discussed the anticipated testimony of David Maddux.  The Petitioner claimed that he was with Maddux most of the day and that Maddux would have contradicted Thomas' testimony that the Petitioner had manufactured the methamphetamine most of the day.  The Director noted that this issue was remanded by the Texas Court of Criminal Appeals.  Counsel indicated that he did not remember Maddux and he attached a statement signed by Maddux in which Maddux said he was paid $100 for his affidavit appearing in the Petitioner's state writ application.  The Director noted that the Petitioner responded by submitting his own unsworn statement

supposedly signed by Maddox indicating that he stood by his original statement made on August 15, 2005.  The Director further noted that Maddux' first affidavit was signed three days after the attestation by the notary.  The Director noted that the Petitioner may not create a fact issue by pointing out conflicting affidavits.  Furthermore, the state habeas court's credibility determinations extend to affidavits of people who never testified at a live hearing.  *See Livingston v. Johnson*, 107 F.3d 297, 303 (5th Cir. 1997).  In the absence of affirmative proof that the findings are inadequate, the state court's findings are deemed to be correct.  *See Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).  Consequently, even if this Court concluded that it did not know who to believe, the presumption of correctness requires a finding upholding the state habeas findings.  The Director added that there is evidence in the record that the Petitioner manufactured his alibi and attempted to induce Thomas to lie.  Finally, Maddux's testimony did not provide a perfect alibi.  Maddux claimed that he was with the Petitioner from 11 a.m. to 5 p.m. on the day of the offense.  Thomas testified that the Petitioner was the cook.  The Director argued that the Petitioner could have been the primary cook and still have spent most of the day with Maddux.  In short, the Petitioner presented nothing to overcome the presumption of correctness afforded to the state habeas findings of fact.

The Petitioner's response described the State's affidavit as a fake.  He noted that the letter he submitted from Maddux was simply a letter, as opposed to an affidavit.  He asserted that Maddux's original statement was sworn to before a notary.  He argued that there is no conflicting affidavits because the State's affidavit is meaningless because it is unsworn and it is a forgery.  He asserted that the document submitted by counsel was simply given to him by the State.  He went on to complain of illegal activity in the state court and asked for an evidentiary hearing to discover the illegal activity that has taken place in this case.  The Court notes that the Petitioner did not provide any evidence of illegal activity.  He offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir. 1988).

In analyzing the first ineffective assistance of counsel claim, the Court notes that the Petitioner correctly argued that counsel had a duty to conduct a reasonable amount of pretrial investigation. *See Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986). The duty included seeking out and interviewing potential witnesses. *Lockhart*, 782 F.2d at 1282; *Williams v. Beto*, 354 F.2d 698 (5th Cir. 1965). To succeed on the claim, he must show that had counsel investigated the claim he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.,* 469 U.S. 1041 (1984). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989).

In the present case, the Petitioner presented a number of affidavits. He presented an affidavit from David Maddux, who said that the Petitioner was with him from 11:15 a.m. to 5 p.m. Maddux added that he thought the claim that the Petitioner manufactured drugs was impossible since they were together all day. He added that he attempted to contact counsel to tell him what he knew, but counsel did not return his phone calls. He also approached counsel before trial, but counsel told him that his testimony would have be unnecessary. The affidavit satisfied the requirements in *Alexander* and *Gomez*, although the Director appropriately noted that the affidavit was signed three days after it was notarized. The Petitioner also provided a statement from Patrick Butler, who indicated that Thomas told him the district attorney's office was forcing her to testify and lie against the Petitioner. The Petitioner provided an affidavit from his brother and his own affidavit which, among other things, explain why counsel should have interviewed Travis Roberts. The Petitioner's submissions were sufficient to potentially obtain habeas corpus relief. Consistent with established case law, the Texas Court of Criminal Appeals remanded the case back to the trial court for further development regarding the Petitioner's complaints that counsel did not interview potential witnesses. The issue was thus developed. Counsel filed his affidavit stating that he did not recall Patrick Butler or David

8

Maddux.  The trial court then issued findings of fact, and the Texas Court of Criminal Appeals denied relief.

As previously noted, Congress has severely limited the role of federal courts in granting habeas corpus relief to state inmates.  *See Schriro v. Landrigan*, 127 S.Ct. at 1939.  Under 28 U.S.C. § 2254(d), this Court may not grant relief unless the Petitioner shows that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  *See Moore v. Cockrell*, 313 F.3d at 882.  The Petitioner has not satisfied his burden.  At best, he has shown that the state courts could have reached a different decision.  He is not entitled to relief just because he thinks the decision by the state courts was incorrect; instead, he must show that it was unreasonable.  *Williams*, 529 U.S. at 409-412; *Summers v. Dretke*, 431 F.3d 861, 869 (5th Cir. 2005).  However, the decision by the Texas Court of Criminal Appeals was both consistent with Supreme Court law and the findings were reasonable.  Relief should be denied on the claim that counsel was ineffective for failing to seek out and interview potential witnesses.

The Petitioner next complained that counsel was ineffective for failing to obtain clothing and conduct testing on the clothing.  He noted that residue from cooking would have appeared on his clothing.  He added that the State may have tested his clothing and not have revealed the results because they were negative.  The Court would note that this assertion is speculative and conclusory.  The Petitioner also complained that counsel claimed that he failed to see how testing would have revealed exculpatory evidence.  In evaluating the claim, the Court notes that this issue was developed during the state habeas corpus proceedings.  Counsel noted in his affidavit that he was retained and that his client did not have the resources to obtain a forensic examination of his clothing.  He added that under the facts of the case, there was nothing to suggest that a clothes test would have resulted in any forensic exculpatory evidence.  The police report revealed that the shirt was not tested for

9

presence of methamphetamine but that it was decontaminated.  The Director also correctly argued that the absence of the presence of methamphetamine on his shirt did not mean that he did not participate in the manufacture of methamphetamine.  Indeed, if Maddux's affidavit that the Petitioner was with him from 11:15 a.m. to 5 p.m. was true, the Petitioner possibly would have had little residue on his shirt, but that would not have meant that he was not guilty of the charges.  In any event, counsel's decision not to test the shirt was reasonable under the circumstances.  The Petitioner has not shown that counsel's failure to have the shirt tested amounted to deficient representation.  He likewise failed to show prejudice in light of the ample evidence that he was involved in the manufacture of methamphetamine.  Finally, the Petitioner is not entitled to relief on this issue because he failed to satisfy the requirements of 28 U.S.C. § 2254(d) regarding the presumption of correctness that must be accorded to state habeas corpus proceedings.

The Petitioner next complained that trial counsel pushed his duties off to another attorney, John Tatum, who had not investigated the case to determine if any out-of-court statements were made by him and whether such statements were admissible.  Once again, this issue was developed during the state habeas corpus proceedings.  Counsel made the following reply:

> Mr. Bill Agnew was originally appointed by the court, and I was retained and substituted in as counsel.  I do not understand the charge that I "pushed his (my) duties off to another attorney."  The District Attorney presented me with an open file.  I knew, in advance of trial the statement/statements made by Mr. Lowe, discussed all of the facts with my client several times prior to trial.  I knew the legal issues and I believed the record will reflect that one or more damaging admissions by Mr. Lowe were non-custodial admissions against interest, and under existing law were admissible.

The Director correctly responded that he knew of no case law that prohibited counsel from asking another attorney to stand in for him when he was unavailable.  Moreover, counsel asked the prosecutors for copies of any oral or written statements made by the Petitioner to the police or to the grand jury.  He was told there were none.  At trial, Officer Brooks testified that he questioned the Petitioner and that he did not get much information out of the Petitioner, although the Petitioner denied that there was sodium or lithium there and volunteered that there was no anhydrous ammonia.  Heath's response indicated that he was already aware of one or more damaging admission, which

10

were admissible.  In any event, the Petitioner has not shown that counsel was ineffective for having another attorney stand in for him when he was unavailable.  He likewise failed to show that he was prejudiced because another attorney appeared for counsel.  He has not shown that he is entitled to relief based on ineffective assistance of counsel on this issue.

The ground for relief should be denied for the additional reason that the Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  *See Moore v. Cockrell*, 313 F.3d at 882.

The Petitioner next complained that counsel failed to investigate and to present any mitigating evidence in the punishment phase of the trial.  He argued that counsel could have noted that Thomas received only a five year probation.  The issue was developed during the state habeas corpus proceedings.  Counsel indicated that no mitigating evidence was made known to him by the Petitioner that could have been offered.  He also noted the Petitioner pled true to two prior felony convictions.  The Court notes that mitigating evidence at the sentencing phase of a trial is of particular concern at the sentencing phase of capital murder trials.  *See, e.g, Coble v. Quarterman*, 496 F.3d 430, 433 (5th Cir. 2007).  An attorney's "failure to investigate, develop or present mitigating evidence is not ineffective *per se*."  *Smith v. Cockrell*, 311 F.3d 661, 668-69 (5th Cir. 2002).  Relief is unavailable if a petitioner's proposed mitigating evidence goes no further than to raise a mere possibility of a different outcome, as opposed to the required "reasonable probability."  *Lamb v. Johnson*, 179 F.3d 352, 360 (5th Cir. 1999).  The Petitioner has not shown that there was mitigating evidence that would have led to a different outcome.  He again offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus.  *See Ross v. Estelle*, 694 F.2d at 1011;  *Joseph v. Butler*, 838 F.2d at 788.  Relief should also be denied because he again failed to satisfy the requirements of 28 U.S.C. § 2254(d).

11

The Petitioner next complained that counsel failed to request a hearing or bring to the trial court's attention that a juror, Allen Rush, was possibly biased in that he personally knew Tracy Thomas. Moreover, Rush failed to state that he knew the witness when asked during voir dire. In addition to his own affidavit and the affidavit of his brother, the Petitioner submitted an affidavit from Donna Tucker, who is Tracy Thomas' mother. Tucker stated that she observed that Rush was one of the jurors on the first day of the trial. She knew that Rush was a behavioral counselor to Tracy Thomas' son and had been since his release from TYC. Tucker stated that she informed the Petitioner about Allen Rush during the first break in the trial. The Petitioner stated that he then notified counsel about Rush. He complained that trial counsel's affidavit stated that he did not recall whether he was informed about the juror. Indeed, counsel's affidavit stated that he did not recall whether the Petitioner made him aware that a juror failed to respond to a question showing knowledge of the State's witnesses. He added that he would have followed up with specific questions to this panel member and/or would have challenged this member.

The Director noted that the record indicates that Rush revealed in *voir dire* that he was employed in a law-enforcement related filed, namely, as a counselor for the Angelina County Juvenile Services. Rush added that he would not let that experience affect his judgment. The Director noted that the right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) (citing *Irvin v. Dowd*, 717, 722 (1961)). Bias may be actual or implied. *See Solis v. Cockrell*, 342 F.3d 392, 394 (5th Cir. 2003). A juror is biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). To demonstrate actual bias, "admission or factual proof" of bias must be presented. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2002). A juror may be biased by law where the juror had a "close relationship with one of the important actors in the case or was otherwise emotionally involved in the case, usually because the juror was the victim of a similar crime." *Solis*, 342 F.3d at 394 (citations omitted).

The Director correctly noted that the Petitioner has not shown that Rush was biased against him.  He speculated that Rush may have been sympathetic to Thomas because he counseled her son.  Nothing in the record, however, showed bias in fact or by law.  The Director also noted that Rush's familiarity with Thomas' drug problems may have benefitted the Petitioner, but the Director's comment was pure speculation, just like the Petitioner's speculation on the matter.  The fact of the matter is that the Petitioner has not provided proof that Rush was biased against him, and he has not shown that there is a reasonable probability that he would not have been convicted but for counsel's failure to pursue this matter.  He has not shown prejudice.  Relief should be denied for the additional reason that he once again failed to satisfy the requirements of 28 U.S.C. § 2254(d).

The Petitioner next alleged that counsel was ineffective because he failed to object to the statement made by Officer Brooks, as discussed on page ten of this opinion.  The Petitioner's complaint was developed during the state habeas corpus proceedings.  Counsel correctly noted in his affidavit that there was no legal basis to keep the non-custodial, voluntary damaging statements made by the Petitioner out of evidence.  Counsel was not required to make futile objections.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  The Petitioner failed to show deficient representation on this issue or that he was prejudiced by such deficient representation.  He likewise failed to satisfy the requirements of 28 U.S.C.  § 2254.

The Petitioner finally complained that counsel failed to request a "no-adverse-inference" instruction to the jury during the punishment phase. The Director noted that there was an instruction during the guilt-innocence charge informing the jury not to consider the Petitioner's silence as evidence of guilt, although it was not repeated in the punishment charge.  The Petitioner's right not to testify was also discussed during *voir dire*.  The Director conceded that the Petitioner was entitled to have a "no-adverse inference" instruction during the punishment phase of the trial, however, he argued that it was sound trial strategy not to draw it to the attention of the jury.  *See Calderon v. State*, 950 S.W.2d 121, 132-33 (Tex. App. - El Paso 1997, no pet.);  *Henson v. State*, 734 S.W.2d 119, 120 (Tex. App. - Houston [1st Dist.] 1987, pet ref'd).  The Court is of the opinion that the jury

13

was clearly aware of the fact that they could not penalize the Petitioner for failing to testify. Moreover, the Petitioner has not shown that the failure to ask for the instruction affected the length of his sentence.  In other words, he failed to show harm.  Moreover, he again failed to satisfy the requirements of 28 U.S.C. § 2254(d).

As a final matter, the Petitioner complained about how the state habeas corpus proceedings were conducted, although he added that his comments were aimed at showing the need for an evidentiary hearing.   Nonetheless, the Fifth Circuit has held that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.  *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999);  *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992).

In conclusion, the Petitioner has not shown that he is entitled to federal habeas corpus relief. Even if he had shown that his attorney's representation was deficient at times, he failed to satisfy the prejudice prong in light of the overwhelming evidence of guilt.  Relief should be denied.

<u>Certificate of Appealability</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the Petitioner has not yet filed a notice of appeal, the Court will, nonetheless, address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's

14

constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, the Petitioner is not entitled to a certificate of appealability as to his claims. It is accordingly

**ORDERED** that the above-styled petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice.  A certificate of appealability is **DENIED**.  All motions by either party not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **20** day of **December, 2007.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

15